IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ORIX PUBLIC FINANCE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:11-CV-0678-D |
| VS. | § | |
| | § | |
| LAKE COUNTY HOUSING AND | § | |
| REDEVELOPMENT AUTHORITY, | § | |
| MINNESOTA, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court must decide whether it can exercise *in personam* jurisdiction over two Minnesota public entities in a lawsuit arising from an aborted contract centered in Minnesota, to be performed largely in that state and governed by Minnesota law, where the Texas contacts are based on the fortuity of the plaintiff's presence here. Concluding that the court cannot exercise *in personam* jurisdiction, it dismisses this case without prejudice by judgment filed today.

I

A

This is an action by plaintiff Orix Public Finance, LLC ("Orix") against defendants Lake County Housing and Redevelopment Authority, Minnesota ("LCHRA") and Lake County, Minnesota ("Lake County") for breach of contract and declaratory judgment. Orix

alleges in its state-court petition[1] that, in late 2010, defendants and their financial advisor, Northland Securities, Inc. ("Northland"), sought funding from Orix for the Lake County Fiber-Optic Telecommunications Project (the "Project"), of which National Public Broadband ("NPB") was to be the operator.  The goal of the Project was to provide high speed telecommunications, Internet, and video services to homes and businesses in Minnesota.  Defendants anticipated that the funding for the Project would come from a grant and loan from the federal government via the Rural Utilities Service ("RUS"), and from matching funds from Lake County.  Lake County sought out Orix to obtain gap financing to cover expenses that the RUS loan and grant could not cover.  Based on Lake County's representations that a binding commitment was needed quickly, Orix and Lake County began negotiating a bond purchase agreement (the "Agreement") that provided for a 12% interest rate and gave Orix a security interest and a right to receive cash flow revenue proportionally with the rights held by RUS.  During the negotiations, defendants represented to Orix that RUS had changed its policy and now required that any other security interests and rights to cash flow revenue be subordinate to RUS's security interests and rights to cash flow revenue. In December 2010 Orix and Lake County entered into the Agreement.

Under the Agreement, LCHRA agreed to issue bonds, and Orix agreed to purchase them.  The proceeds were intended to (1) finance a portion of the Project ineligible for payment by the RUS loan or grant, (2) fund a reserve fund to secure payment for the bonds,

---

[1]The case was filed in Texas state court and removed to this court.

(3) fund interest on the bonds and the RUS loan, and (4) pay costs associated with issuing the bonds. Orix agreed to purchase a maximum principal amount of the bonds of $6.25 million at an interest rate not to exceed 15%. Orix expected the agreement to close by the end of February 2011 because of RUS deadlines, but defendants' agents advised Orix that RUS had granted an extension to the end of April. Orix meanwhile discovered a press release dated February 8, 2011 that stated that the Lake County Board of Commissioners (the "Board") had approved a direct investment of Lake County's funds and did not intend to issue bonds to fund the Project.

Orix alleges in its state-court petition that defendants unilaterally repudiated the Agreement. Orix attempted to negotiate with defendants to restructure the bond issuance, but defendants notified Orix that they were not in a position to perform the Agreement and that the RUS had fully rejected the transaction contemplated by the Agreement. According to Orix, defendants did not provide specific reasons or evidence supporting their allegation that RUS had rejected the Agreement. This lawsuit followed.

B

Defendants move to dismiss for lack of *in personam* jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). They contend that they have no connection with Texas; the Agreement relates to a proposed issuance of bonds for a project to install broadband in Minnesota; defendants are municipalities created under Minnesota law who conduct no business in Texas and have no purposeful contacts with Texas; and the Agreement was executed by Lake County, Minnesota and is not performable in Texas. Defendants maintain that the court lacks

- 3 -

specific jurisdiction over them because neither defendant purposefully directed any activities to Texas and because Orix's claim does not arise from or relate to a defendant's contact with Texas. Defendants posit that they are Minnesota municipalities with no contact with Texas in connection with the Agreement; the Agreement relates to a project wholly located within the state of Minnesota; neither defendant traveled to Texas in connection with the Agreement; nothing in the Agreement calls for a defendant to perform in Texas; the Agreement dictates that the bonds are to be delivered in New York, not Texas; and the bonds were to be secured by personal property in Minnesota. Defendants maintain that the court lacks general jurisdiction because defendants do not have sufficiently systematic and continuous contacts with Texas. They assert that, even if they have minimum contacts with Texas, the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice.

Orix opposes defendants' motion and contends in the alternative that the court should transfer the case to the District of Minnesota rather than dismiss it. Orix maintains that the following contacts establish the court's specific jurisdiction: (1) defendants solicited Orix, a Texas resident, to enter into a contractual relationship with defendants; (2) defendants communicated with Orix, a Texas resident, by email and telephone; (3) defendants entered into a contract requiring partial performance in Texas; (4) defendants established a long-term continuing relationship with Orix[2]; and (5) defendants knew that Orix was located in Texas.

---

[2]Orix's response states that defendants entered into a long-term continuing relationship with *defendants*, but the court infers that Orix intended to assert that defendants

Defendants reply that it is indisputable that the nexus of the Agreement is centered squarely in Minnesota because the Agreement is governed by Minnesota law, and because the bonds are to be issued in Minnesota pursuant to Minnesota law for the purpose of developing a broadband infrastructure in Minnesota.  They maintain that Orix has not established that the court has personal jurisdiction over them because no representative of defendants set foot in Texas in connection with the Agreement; the contacts on which Orix relies are based on the mere fortuity that Orix happens to be a Texas resident and do not support Orix's argument that the defendants purposely directed activities toward Texas or purposely availed itself of the privileges of conducting activities in Texas; and the contacts on which Orix relies are not those of defendants but of third parties (presumably, Northland and NPB) who did not have the authority to bind defendants to the Agreement.[3]

---

entered into a long-term continuing relationship with *Orix*.

[3]As to agency, defendants maintain that Orix has not made a sufficient showing that any of the communications between NPB or Northland and Orix or that any contacts that Northland or NPB had with Texas are attributable to defendants for jurisdictional purposes. Defendants aver that under Minnesota law, neither NPB nor Northland had the power to enter into the Agreement for defendants.

The court permitted Orix to file a surreply to defendants' reply. Orix's surreply and defendants' final reply focus on whether the actions of purported agents (Northland and NPB) can be attributed properly to defendants for purposes of jurisdiction. The court holds that, even considering the contacts made by Northland and NPB with Texas to be contacts made by defendants with Texas, Orix has not established that defendants have minimum contacts with Texas. The court therefore declines to address whether the contacts made by Northland and/or NPB can be attributed to defendants for jurisdictional purposes.

II

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite.  The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant.  If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution.  *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with the Due Process Clause of the Fourteenth Amendment.  *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).

The defendants' contacts with the forum may support either specific or general jurisdiction over the defendants.  *Mink*, 190 F.3d at 336.  "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  General jurisdiction exists when a defendant's contacts with the

- 6 -

forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted).[4]

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted).

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines: (1) the defendants' burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

III

A

Orix maintains that the court can exercise specific *in personam* jurisdiction on the following grounds. First, Orix maintains that the actions of an agent (Northland) can be used to establish jurisdiction over the principal (defendants). Defendants, through Northland,

---

[4]As defendants note in their reply, Orix does not appear to assert that the court has general jurisdiction. The court therefore focuses solely on whether it has specific jurisdiction.

- 7 -

initiated contact with Orix in Texas by soliciting Orix to participate in the bond proposal, and Northland represented to Orix that it was acting as the exclusive placement agent in offering the bonds. Orix argues in the alternative that, if Northland was not acting as defendants' agent, defendants ratified Northland's actions.

Second, Orix avers that it participated in the discussions and negotiations with defendants from Dallas. Orix argues that after the initial contact between Northland and Orix, the parties engaged in substantial discussions regarding the Project and negotiated the Agreement through emails and telephone conferences, and that the telephone conferences and emails involved representatives of Orix, representatives of Northland, defendants' counsel, and NPB, the former operator of the Project.

Third, Orix contends that defendants sent drafts of the Agreement and the signature pages of the Agreement to Orix in Texas.

Fourth, Orix maintains that its Chief Executive Officer executed the Agreement in Dallas.

Fifth, Orix contends that the Agreement requires that partial performance take place in Texas. Orix lists the following as activities that would occur in Texas under the Agreement: bonds and repayment would be further secured by a letter of credit approved by Orix; the parties would negotiate the definition of excess cash flow; Orix would be able to review all contracts and other due diligence materials; bond counsel's opinions would be delivered to Orix; notices to Orix would be delivered to Dallas; defendants would reimburse Orix for its out-of-pocket expenses; and, in the event of termination, defendants would pay

a termination fee to Orix.

Sixth, Orix maintains that the Agreement contemplates a ten-year ongoing relationship between Orix and defendants because, *inter alia*, the Agreement has a term of ten years.

Seventh, Orix posits that the Agreement has no forum selection clause and that, although the Agreement provides that Minnesota law applies, this factor can be outweighed by other considerations.

Orix maintains generally that its claims arise out of defendants' contacts with Texas. Orix contends that its claims are for breach of the Agreement and for declaratory judgment regarding the construction of the Agreement, the rights and obligations of Orix and defendants, defendants' repudiation, the termination of the Agreement, and Orix's entitlement to damages and/or a termination fee. Orix argues that its claims clearly arise out of and relate to the Agreement established through defendants' contacts with Texas.

Finally, Orix contends that the court's exercise of jurisdiction over defendants comports with fair play and substantial justice.

                                         B

Under the Due Process Clause of the Fourteenth Amendment, "the mere contracting with a resident of the forum state is not in itself sufficient to establish minimum contacts such that the forum state may exercise personal jurisdiction over the defendant." *Brammer Eng'g, Inc. v. E. Wright Mountain L.P.*, 307 Fed. Appx. 845, 847-48 (5th Cir. 2009) (per curiam) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Further, the Fifth Circuit held in *Brammer Engineering* that activities incidental to forming a contract—such

as communications and requests for documents sent to the forum state because the forum state is the home of one of the parties to the contract—are insufficient to constitute purposeful availment or to amount to the minimum contacts required to support personal jurisdiction. *Id.* at 848; *see also McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("We have held that communications relating to the performance of a contract themselves are insufficient to establish minimum contacts."). Instead, the court is to consider the anticipated place of performance of the contract, choice-of-law provisions, and other relevant factors to determine whether it can exercise specific personal jurisdiction. *See Brammer Eng'g*, 307 Fed. Appx. at 848; *see also Burger King*, 471 U.S. at 479 ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum."). The *Brammer Engineering* panel noted that the performance of the contract was centered in Texas, not the forum state (Louisiana), and that the contract included a Texas choice-of-law provision. *Brammer Engineering*, 307 Fed. Appx. at 848-49. The court also found relevant the fact that the contacts with Louisiana were merely incidental to performance of the Texas-centered contract and resulted from the coincidence that one party was a Louisiana resident. *Id.* at 848.

The court should also look to whether a long-term relationship between the parties is planned. *See Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) (considering long-term relationship a factor in determining whether contract

produced minimum contacts).  But a contract that creates a long-term relationship is not alone a contact that is sufficient to establish personal jurisdiction.  *See McFadin*, 587 F.3d at 760 (rejecting *in personam* jurisdiction despite plaintiffs' reliance "on the fact that the contract created a ten-year sales representation relationship between the parties and that there were significant communications—including sales orders and commission payments—between [the defendant] in Colorado and the [plaintiffs] in Texas.").

In determining whether minimum contacts exist in a breach of contract case, there is an important difference between "communications which actually give rise to intentional tort claims and communications which 'merely solicited business from the forum, negotiated a contract, formed an initial attorney-client relationship, or involved services not alleged to form the basis of the complaint.'"  *Planet Beach Franchising Corp. v. Fisher & Zucker L.L.C.*, 2011 WL 3268645, at *3 (E.D. La. July 28, 2011) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)).  Only communications that actually give rise to an intentional tort claim can provide the basis for personal jurisdiction.  *See id.*; *see also Am. Eagle Ins. Co. v. Teague-Strebeck Motors, Inc.*, 1997 WL 452948, at *5 (N.D. Tex. Aug. 5, 1997) ( Solis, J.) ("Under prevailing Fifth Circuit authority, the exchange of communications in the process of contract formation cannot be characterized as the type of purposeful activity through which a defendant might avail itself of the benefits and protection provided by the forum state." (citation omitted)).  For example, in *Wien Air Alaska* the plaintiff alleged that the defendant committed several tortious acts outside of Texas that were directed toward the plaintiff in Texas.  *See Wien Air Alaska*, 195 F.3d at 212.  The defendant's contacts with

- 11 -

Texas included letters, faxes, and telephone calls to Texas, the contents of which included fraudulent misrepresentations and promises, and the communications failed to disclose material information.  *Id.*  The defendant argued that communications directed into a forum are alone insufficient to support a finding of minimum contacts and cited several cases in support.  *Id.* at 213.  The court noted that

> [i]n all of these cases, however, the communications with the forum did not actually give rise to a cause of action.  Instead, the communications merely solicited business from the forum, negotiated a contract, formed an initial attorney-client relationship, or involved services not alleged to form the basis of the complaint.  These cases are thus distinguishable from the present case.  When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.

*Id.*  "The case law recognizes that in some circumstances, an out-of-state party's communications with a party in the forum state can provide a sufficient basis for specific personal jurisdiction in that forum.   In such cases, however, the content of the communications has a direct connection to the causes of action asserted."  *Barney F. Kogen & Co. v. Tred Avon Assocs. Ltd.*, 393 F.Supp.2d 519, 523-24 (S.D. Tex. 2005); *see also Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (noting that in cases *not* involving an intentional tort, mere communications and negotiations with a resident of the forum state were not enough to subject the non-resident defendant to the forum state's jurisdiction).  For example, in cases of alleged fraud and/or misrepresentation in connection with a communication or a contract, the mere communication or contact may be sufficient for minimum contacts.  *Barney F. Kogen*, 393 F.Supp.2d at 524 (citing *Wien Air Alaska*, 195

- 12 -

F.3d at 213; *Lewis*, 252 F.3d at 358-60; *S & J Diving, Inc. v. Doo-Pie, Inc.*, 2002 WL 1163627, at *3 (S.D. Tex. May 30, 2002)).  But in the absence of an alleged intentional tort committed via the *contents* of the communication into the forum state, "the exchange of communication between a resident and non-resident regarding the formation of a contract is insufficient to confer jurisdiction."  *Harch Hyperbarics, Inc. v. Martinucci*, 2010 WL 3398884, at *4 (E.D. La. Aug. 20, 2010) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

Additionally, the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts."  *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992); *see also Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) (holding that significance of alleged minimum contacts is severely diminished by fact that contract contemplated performance outside the forum state); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (noting that finding of no minimum contacts is bolstered by fact that performance of contract was centered in Oklahoma even though defendant mailed payments to Texas); *Martinucci*, 2010 WL 3398884, at *4 (noting that contract was not to be performed in forum state).  "The Fifth Circuit has made clear that engaging in activities related to the contract but which do not encompass performance of the contract are insufficient to constitute minimum contacts." *Martinucci*, 2010 WL 3398884, at *4 (citation omitted).  In *Martinucci* the court held that the defendants did not have minimum contacts with the forum state through the mere

formation of the contract where defendants communicated via telephone and email with plaintiffs in the forum state regarding the formation of the contract and traveled to the forum state, but the performance of the contract and alleged fraud occurred outside the forum state. *Id.*

Finally, if the contract specifies that it is governed by non-forum law, this weighs against a finding of minimum contacts. "The significance of these alleged minimum contacts is severely diminished by the fact that the contract at issue specified that it was to be governed by [non-forum] law[.]" *Freudensprung*, 379 F.3d at 345; *Holt Oil*, 801 F.2d at 778 (holding that significance of Texas contact was diminished by contractual provision specifying that Oklahoma law governed contract); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (holding that although defendant's offer to contract was accepted in Texas, the significance of that contact was diminished by contractual provision specifying that agreement was governed by Alaska law).

C

Accepting Orix's uncontroverted allegations as true, the court concludes the contacts on which Orix relies are sufficiently similar to the ones asserted by the plaintiff in *Brammer Engineering* that the court lacks sufficient minimum contacts over defendants. In the instant case, the Agreement is centered in Minnesota rather than Texas, and performance is to take place primarily outside of Texas. This weighs against a finding of minimum contacts. *See, e.g., Holt Oil*, 801 F.2d at 778. The Project is located wholly within Minnesota and serves homes and businesses within that state. The legal entities—including LCHRA, the party who

was to issue the bonds under the Agreement—are located in Minnesota.  The bonds (to be delivered to New York) were to be secured by property located in Minnesota.   The Agreement provides that Minnesota law governs, which severely diminishes the significance of any contacts that defendants have with Texas.  *See, e.g., Freudensprung*, 379 F.3d at 345. And Orix does not allege that any representative or agent of defendants visited Texas in connection with the Agreement.

The contacts that this litigation has with Texas are largely based on the fortuity that Orix is located in Texas and that it undertook acts in this state.  But "[t]he mere fortuity that a party to a contract happens to be a Texas resident, coupled with that party's unilateral performance in the forum state, is not enough to confer jurisdiction."  *Chang v. Virgin Mobile USA, LLC*, 2009 WL 111570, at *5 (N.D. Tex. Jan. 16, 2009) (Fitzwater, C.J.) (citing *Holt Oil*, 801 F.2d at 778).  And even if defendants or Northland solicited Orix's business in Texas, merely soliciting business within the state does not constitute purposeful availment. *See, e.g., Wien Air Alaska*, 195 F.3d at 213.  Nor are mere negotiations with a resident of the forum state enough.  *See also Lewis*, 252 F.3d at 359.  And although the Agreement may have contemplated a ten-year relationship between Orix and defendants, this is not alone sufficient to confer personal jurisdiction over defendants.  *See, e.g., McFadin*, 587 F.3d at 760.  Finally, Orix does not allege that defendants committed an intentional tort or that defendants committed an intentional tort through their communications with Orix in Texas. Absent an allegation of an intentional tort *in the contents* of the communications, communication with Orix in Texas is insufficient to establish minimum contacts.  *See, e.g.,*

*Martinucci*, 2010 WL 3398884, at *4; *Barney F. Kogen*, 393 F.Supp.2d at 524.

Because Orix has not established that defendants have sufficient minimum contacts with Texas from which their causes of action arise, the court grants defendants' motion to dismiss.

IV

Orix moves in the alternative to transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1631.  Defendants reply that Orix has not made the required showing for transfer, and that dismissal is appropriate.

Under § 1631, when the court finds that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed[.]"  The decision to transfer a case lies within the discretion of the district court.  *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (per curiam).  In some cases, "the interests of justice may be best served by requiring the plaintiff[] to begin at the beginning in the proper forum."  *Id.*; *see also Cappa Fund III, LLC v. Acttherm Holding, A.S.*, 2010 WL 3766754, at *4 (N.D. Tex. Sept. 27, 2010) (Lindsay, J.) (exercising discretion to dismiss action rather than transfer case where court lacked personal jurisdiction and it was unclear whether California had jurisdiction over defendants).

Moreover, it is not clear that the court can transfer a case under § 1631 when the court lacks personal jurisdiction.  *See, e.g., Rouben v. Parkview Hosp., Inc.*, 2010 WL 4537012, at *2 (S.D. Miss. Nov. 2, 2010).  Section 1631's "lack of specificity has led to a division

among the federal courts as to whether Section 1631 allows transfer only when subject matter jurisdiction is lacking in the transferor court or if it extends to other types of jurisdiction defects, including a lack of personal jurisdiction."  15 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3842, at 8 (3d ed. 2007).  "Although the federal courts are pretty evenly divided on the subject, the better view appears to be that Section 1631 is limited to subject matter jurisdiction defects and is unrelated to personal jurisdiction or venue."  *Id.* at 11.  The Fifth Circuit has not specifically addressed this issue, but it has recognized the possibility that § 1631 may not permit a court to transfer a case where personal jurisdiction is lacking.  *See Rouben*, 2010 WL 4537012, at *2; *see also Bentz v. Recile*, 778 F.2d 1026, 1028 n.5 (5th Cir. 1985) (per curiam) (noting that other courts have held that § 1631 appears from legislative history to apply only to cases in which the transferor court lacks *subject matter jurisdiction*, but that the court need not reach the issue).

Because Orix has not established that it is in the interest of justice for the court to transfer rather than dismiss this case, and because it is unclear whether the court can transfer this case under § 1631 when it lacks *in personam* jurisdiction, the court in its discretion declines to transfer this case to the District of Minnesota and instead dismisses the case without prejudice.

\* \* \*

The court grants defendants' April 8, 2011 motion to dismiss and dismisses this action

without prejudice by judgment filed today.

**SO ORDERED.**

August 16, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE